OPINION
{¶ 1} Defendant-appellant, Brandie Rhodes, appeals her conviction and sentence following a jury trial in the Butler County Court of Common Pleas for forgery.
 {¶ 2} On May 25, 2003, appellant bought gas and a cigarette lighter at a Clark gas station on Hamilton-Cleves Road in Butler County with a counterfeit $20 bill. When appellant was subsequently pulled over for the offense, five more counterfeit $20 bills were found in her car. When later interviewed by the police, appellant initially denied knowing where the bills found in her car came from. The bill used at the gas station and the bills found in her car all had the exact same serial number.
 {¶ 3} Appellant did not testify at trial. However, in a written statement which was admitted at trial, appellant told the police that "[a]bout three months ago I met a guy who became my boyfriend. His name is Robert Wilson. About 3 or 4 weeks ago I found out that Robert and a friend of his, Scott Emerson[,] made fake money on a computer. I learned this from Robert[.] Last Tuesday Robert and I argued and started splitting up. I talked to Robert Thursday and then yesterday. * * * Scott dropped Robert off at my house around 10:00 p.m. Robert was supposed to spend the night but then we got into another argument. Before the argument Robert took my car and went to the drive thru for beer. * * *.
 {¶ 4} "When Robert got back we got into an argument. Robert called Scott to pick him up. [B]efore he left Robert told me he left money in my car. He told me I better not get mad and tell anyone it was fake. I figured it was fake money he left in my car because I didn't think he had any money and I know what he does, he makes fake money. He and Scott did this a few times on Scott's computer. * * *.
 {¶ 5} "Tonight I went to the Clark Gas Station on Hamilton Cleves Road and bought gas for $10.02. I gave the clerk a 20 dollar bill that I thought was real because I had a twenty in my pocket. I don't know how the fake twenty got in my pocket. I left[.] * * * When I was pulled over I thought oh shit because I knew the fake money was in the car. The money was down by the shifter. I put the fake money in the pocket of the door so I wouldn't get caught with it. I thought I was getting pulled over for speeding. * * *."
 {¶ 6} Appellant was indicted on two counts of forgery in violation of R.C. 2913.31(A)(3). Count One charged her with forgery for passing the counterfeit $20 bill at the gas station; Count Two charged her with forgery for the five other counterfeit $20 bills found in her car. On October 22, 2003, a jury found her guilty of forgery under Count Two but acquitted her under Count One. The trial court sentenced appellant to five years of community control. It also ordered her to pay $20 in restitution to the Clark gas station and to get a college degree within 30 months beginning on January 1, 2004. At the time of the trial, appellant had completed two years of college. This appeal follows in which appellant raises four assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "The trial court erred by denying appellant's motions for acquittal pursuant to [crim.r.] 29 at the close of the state's case as to count two."
 {¶ 9} Assignment of Error No. 2:
 {¶ 10} "The trial court erred by overruling Defendant-Appellant's motion for acquittal pursuant to [crim.r.] 29 at the close of defendant's case."
 {¶ 11} At the close of the state's case, appellant moved for a judgment of acquittal under Count Two pursuant to Crim.R. 29(A). Following the denial of the motion, the defense rested on the record without introducing any additional evidence and renewed its motion for acquittal under Crim.R. 29. The trial court denied the motion. On appeal, appellant argues that the state failed to show beyond a reasonable doubt that appellant did utter or possess with purpose to utter the counterfeit bills found in her car. Appellant contends that since she was acquitted under Count One, the fact she paid with a counterfeit $20 bill at the gas station could not be used when considering her Crim.R. 29 motions.
 {¶ 12} Under Crim.R. 29, a court shall not enter judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Smith,80 Ohio St.3d 89, 113, 1997-Ohio-355. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 13} Appellant was convicted of forgery in violation of R.C. 2913.31(A)(3), which states: "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." Under R.C. 2913.31-(H), "utter means to issue, publish, transfer, use, put or send into circulation, deliver, or display."
 {¶ 14} We note at the outset that at the time the trial court considered appellant's Crim.R. 29 motions, she had not yet been acquitted under Count One. Thus, it was proper for the trial court to consider all evidence before it, including the fact that before five counterfeit $20 bills were found in her car, she had just paid with a counterfeit $20 bill at the gas station.
 {¶ 15} The state presented evidence that (1) although appellant knew there were counterfeit bills in her car, she did not remove them but rather left them in her car, (2) the following day, she paid with a counterfeit $20 bill at the gas station, (3) when she was pulled over, she intentionally moved the counterfeit bills in her car from the console to the driver's side door pocket to hide them so that she would not be caught with them, and (4) the bill used at the gas station and the bills found in her car all had the exact same serial number.
 {¶ 16} Viewing this evidence in a light most favorable to the prosecution, we find that a rational trier of fact could find that the elements of the offense were proved beyond a reasonable doubt. The trial court therefore properly overruled appellant's Crim.R. 29 motions. Appellant's first and second assignments of error are overruled.
 {¶ 17} Assignment of Error No. 3:
 {¶ 18} "The trial court erred in refusing to give defendant's requested jury intructions."
 {¶ 19} Appellant's proposed jury instructions with regard to Count Two of the indictment stated that "before you can find [appellant] guilty [of forgery], you must find beyond a reasonable doubt that * * * [appellant] with purpose to defraud, possessed with the purpose to utter five twenty dollar bills which she knew were forged[.]" Although Count Two of the indictment specifically charged appellant with "purpose to defraud, or knowing that she was facilitating a fraud," the proposed jury instructions neither referred to nor defined "facilitating." With regard to "possession," the proposed jury instructions simply stated: "Possession with the intent to utter is an essential element of the crime of forgery."
 {¶ 20} By contrast, the trial court's jury instructions specifically referred to the phrase "[appellant] with purpose to defraud, or knowing that she was facilitating a fraud[.]" The trial court's jury instructions defined "facilitating" as "helping, promoting, assisting or aiding." "Possession" in turn was defined as "a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 21} Appellant argues that the trial court erred by defining "facilitating" as "there was no evidence in the record of facilitating * * * [or] that she helped anyone do anything." Appellant also challenges the trial court's definition of "possession" on the ground that the definition not only concerns possession of illegal substances, it also implies appellant had the duty to divest herself of the counterfeit $20 bills found in her car.
 {¶ 22} Appellant was charged with and tried under R.C.2913.31(A)(3), which states: "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * utter, or possess with purpose to utter, any writing that the person knows to have been forged." (Emphasis added.) The statute clearly makes "facilitating a fraud" an essential element of the crime of forgery. Likewise, the statute also clearly makes "possess[ion] with purpose to utter" an essential element of the crime of forgery. Under R.C. 2945.11, the trial court is required to instruct the jury on "all matters of law necessary for the information of the jury in giving its verdict." See, also, Statev. Comen (1990), 50 Ohio St.3d 206.
 {¶ 23} We find that the trial court properly instructed the jury with regard to "facilitating." As just noted, "facilitating a fraud" is an essential element of the crime of forgery and the trial court was required to instruct the jury on this element. In addition, the record shows that appellant knew that her boyfriend made counterfeit money and that he had put counterfeit money in her car which she failed to remove. The record also shows that appellant intentionally moved the counterfeit bills in the car so that she would not get caught with them.
 {¶ 24} Likewise, we find that the trial court properly instructed the jury with regard to "possession." Again, it is an essential element of the crime of forgery and the trial court was required to instruct the jury on this element. Contrary to appellant's assertion, the court's definition does not concern possession of illegal substances. See R.C. 2925.01(K). Rather, the trial court used the definition of "possession" found in R.C. Chapter 2901, the general definitional section of the criminal code, and more specifically in R.C. 2901.21(D)(1) (requirements for criminal liability). Finally, the court's definition cannot imply that appellant was under a duty to divest herself of the counterfeit bills found in her car as the trial court clearly and specifically instructed the jury during trial that appellant did not have the duty to do so.
 {¶ 25} The trial court, therefore, did not err by giving the foregoing instructions rather than appellant's proposed jury instructions. Appellant's third assignment of error is overruled.
 {¶ 26} Assignment of Error. No. 4:
 {¶ 27} "The trial court erred by finding unsupported aggravated sentencing factors and committed an abuse of discretion by sentencing appellant to require completion of a college degree within 30 months."
 {¶ 28} Appellant first argues, and the state concedes, that the trial court erred by ordering her to pay $20 in restitution to the Clark gas station when she was acquitted under Count One. We agree. Since appellant was specifically acquitted under Count One of the charge for which restitution was ordered, such order of restitution was improper. The sentence of restitution is therefore reversed. See State v. Hafer, 144 Ohio App.3d 345,2001-Ohio-2412.
 {¶ 29} Appellant also argues that the trial court abused its discretion by ordering her to complete a college degree within 30 months. Appellant contends that this community control sanction is not reasonably related to her crime.
 {¶ 30} When imposing community control sanctions, a trial court "may impose any other conditions of release under a community control sanction that the court considers appropriate[.]" R.C. 2929.15(A)(1). While a trial court has broad discretion in imposing community control sanctions, such discretion is not unlimited. State v. Talty, Medina App. No. 02CA0087-M, 2003-Ohio-3161, ¶ 9. A trial court "is not free to impose arbitrary conditions that significantly burden the defendant in the exercise of [her] liberty and bearing only a remote relationship to the crime for which [she] was convicted and to the objectives sought by probation of education and rehabilitation." Id. quoting State v. Livingston (1976),53 Ohio App.2d 195, 196.[1]
 {¶ 31} In determining whether a community control sanction is unreasonable, "courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." State v. Jones (1990), 49 Ohio St.3d 51,53.
 {¶ 32} During the sentencing hearing, the trial court asked to hear from appellant in terms of mitigation. Appellant told the court she had two young children, that she was working and trying to move on with her life, and that her contact with the law was because of her boyfriends. When asked what she wanted to do with her life, appellant replied she wanted to go back to school, and that she had checked into getting financial aid and help. After hearing from appellant's mother, appellant's attorney, and the prosecuting attorney, the trial court sentenced appellant to five years of community control. Then, after asking appellant twice whether she was sure she wanted to go back to college and once whether she was sure she wanted to get her college degree within the next 30 months, the trial court ordered appellant to complete college in 30 months. It also ordered her to complete theft classes as well as classes on relationships.
 {¶ 33} Unlike the theft and relationship classes, we find that ordering appellant to complete college as part of the community control sanctions is not reasonably related to rehabilitating appellant, has no relationship to the forgery crime of which appellant was convicted, and requires a conduct (attending college) which is neither criminal nor reasonably related to future criminality. The trial court therefore abused its discretion by ordering appellant to complete college as part of the community control sanctions. Appellant's fourth assignment of error is well-taken and sustained.
 {¶ 34} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings according to law and consistent with this opinion.
Powell and Valen, JJ., concur.
[1] Upon finding that community control sanctions are the functional equivalent of probation, the Ninth Appellate District held that cases involving probation such as State v. Livingston
(1976), 53 Ohio App.2d 195, and State v. Jones (1990),49 Ohio St.3d 51, properly apply to community control sanctions. Talty
at ¶ 12-13.